Good afternoon. This afternoon we have three cases on for argument. Please be assured that we have read your briefs and we are familiar with your arguments and we should go directly to the points that you want to impress upon us. For those who may not be familiar with our lighting system, when your yellow light goes on, you're beginning to consume your rebuttal time. When the red light goes on, you're out of time. We'll hear argument first in number 06-1406 Honeywell Intl v. Universal Avionics. Mr. Pollack. May it please the court. My name is Howard Pollack. I'm from Fish and Richardson, representing Universal Avionics Systems Corp. We believe, Universal believes, that this appeal presents what Universal thinks are three errors of plain construction related to the asserted 436 patent. Any one of which, if corrected by this court, would compel the conclusion that there's no infringement of the Honeywell patent. I'd like to briefly touch on them all if I can and claim allotted, but I'm going to start with the heading construction issue because I think it's the most clear cut. This court's authority has established, based on the notice function of patent claims, a presumption that words in a patent claim will be given their ordinary meaning to one of the ordinary skill in the art at the time of the invention. In this case, Mr. Pollack, I don't want to preempt your argument, but you could help me on something. I think I know what our precedents say on all these various things. Thank you very much. What I don't know is the way in which the Honeywell terrain thing operates. The red brief, which is your brief I believe, gives a very nice explanation of the TAWS technology. So I think I understand what TAWS does, but nowhere in either of these briefs or anywhere else do I get any clear sense of exactly what it is that Honeywell thought it was inventing that in effect did what I suppose TAWS does, which is tell the pilot that he or she is about to hit a tree in front of the runway instead of past the runway. How do they work? Actually, Your Honor, I would like to address that because it presents what I think is a misconception in what the invention is. The invention is not about warning the pilot as to when they might, as you say, run into the terrain. The invention is about providing a mechanism to enable, to turn on an alerting system based on a characteristic that was never used as part of the alerting system as of that time. The systems that were the state-of-the-art at the time relied on things like altitude and change of rate of altitude, etc. to tell the pilot, hey, you might be getting close to terrain. They relied on also a flap and gear indication, which was a switch that the pilot flipped to say, I am going to be approaching the airport now, so change the characteristics of the warning system. When he goes to 40 degrees flaps, the airplane knows, hey, I am going to land. They don't do that so much. They don't do that anymore. So he needs a different way to tell the airplane, you are getting ready to land. Exactly, to enable certain aspects of the warning systems. And the proxy that this invention came up with is we are going to look to see whether we are close to the airport based on our distance. If we are within a certain distance, we are going to presume, hey, we might be landing at an airport. And it also looks at an alignment estimation to determine whether I am aligned sufficiently with the runway to also presume that the airplane is going to intend to land. Why does it need that? How about if it is overflying the airport at 5000 feet, the distance between the aircraft and the airport is now a mile. Well, that is well within the envelope of, what is it, 12 miles, whatever the envelope is. How does the aircraft understand that it is not landing when it is within a mile of the airport but it is at 5000 feet and at right angles to the runway? That is an additional aspect of the systems that is not dealt with by this invention. In fact, an additional limitation, as it were, that you would add on is you have an altitude cutoff that would also be factored in to determine if I am above the airport but, as you said, 5000 feet above the airport, it is not likely that I am going to land. It is actually a very complicated algorithm because, in certain cases, you might be circling to land. And so there are different kinds of approaches. So this invention does not deal with every situation. It dealt with a stopgap measure, as it were, to deal with the existing ground proximity warning systems and add a mechanism to deal with this flap ambiguity problem, which was the flaps no longer reliably indicate whether I am going to land. Well, why isn't bearing as good an indicator as heading? It might be an alternative. But the question is, what does the claim recite? The claim recites the use of heading. Well, we know what the claim recites. What we don't know, or at least what I don't know, is what the claim means. I think that is the issue before us. And the issue is, as we believe, it is one of ordinary skill, understands what heading means. But why is heading important to them, and why don't you use heading? Heading is important because heading is one measure of alignment. Heading means that the plane is pointing in a certain direction, and by looking at that angle I am pointing and comparing it to the angle of the runway, I can determine whether I am lined up with the runway. Eventually, though, aren't you going to have a heading and a bearing at the same time? You always have a heading. One and the same, right? When you are landing? Technically, when you are landing, your bearing to the airport won't have any real relationship to the heading of the runway, because you will be at the airport. So, at that point, the heading and the bearing would be the same? Could be. Could be. The issue here is the choice that the claim makes. The case, of course, in which the heading doesn't give you the information you need is the case in which you have, for example, a north-south runway and a plane which is 30 miles to the west flying due north. Same heading, using the term in the ordinary sense. Exactly. Without prejudicing the argument that that is not the way it is used in the patent. But, here is my question, and it really goes to the paragraph you are very familiar with on column 6, starting at line 6. And it talks about, essentially, the math of how we work through alignment. At the end of that, I come out with a pretty high degree of confidence that alignment is not talking about the conventional notion of heading, i.e., which direction a plane which is in a particular place may be pointing, but rather what is the physical location of the plane. Now, if that is true, then it seems to me the only way you win this case is to say that the claim is about an embodiment that isn't discussed and that embodiment is not in the claim. Is that fair? That is my problem with your case. I believe that the claim is about an embodiment that may not be expressly discussed in the specification, certainly consistent with what is in the specification. The claim is that you do not preclude using bearing as a measure of alignment. It doesn't require it. And I submit to you, you have all picked up on this very important thing, which is to actually solve the problem 100%, you would probably want to take into account both. Because a bearing, and I apologize, I'm going to turn to the side, I'm now at the same bearing to the bench as I was a moment ago, but I'm flying in the other direction as it were. So my bearing might not be an accurate indicator of whether I'm approaching the bench intended to land, because it doesn't tell you what direction you're flying. It only tells you where you are physically at that moment. Well, let me ask you this question. I kind of skipped over the middle step, but I want to make sure I understand where you are on this. Do you think that paragraph of the specification describes alignment? It doesn't use the word heading nor the word bearing. But do you think it is describing alignment in terms of bearing? Yes. Okay. So your interpretation of the claim would say that claim language does not refer back to that embodiment and to the extent that the claim refers to what we conventionally call heading. That is not present in the specification. That is correct. I think it's clear from the discussion in the prosecution history that that's exactly what the claim means. Because the patentee brought up that proportion when the examiner said, hey, your claim isn't sufficient because it doesn't address what you say you're using for alignment, which is heading. The patentee came back and said, oh, no, look in the spec. The examiner repeated his rejection and said, no, in effect, the spec doesn't answer the question. If you want to do alignment in terms of heading, you need to recite heading in the claim. Honeywell amended the claim to recite heading, and the examiner allowed the claims. But this was in the context of a discussion by Honeywell. And, again, I know you're familiar with this page, but I think it's A270, in which Honeywell kind of bridges the last portion of the gap, which wasn't bridged in the spec and which specifically identifies heading as being part of this arithmetic, actually, I guess, trigonometric calculation. That's done, which we've just determined really means bearing. So I read that and I say, OK, if column six, and don't worry about your time, we'll give you extra time because we're pestering you with questions and we'll do the same for Mr. Toronto. But if bearing, if that paragraph is all about bearing, and the prosecution history is all about the trigonometry, in terms of that passage, the same trigonometry, arctan, and the same devices, and calls the determinate heading, haven't we established the meaning of heading for purposes of this patent? No. OK. And I believe that you can't look at that passage in isolation. You have to look at it in the context of what went before and what comes after, as I just explained. And let me submit to the court this, because I didn't appreciate it early on. This issue of heading, to a person of ordinary skill, this is a black and white issue. It really is, as if the claim said, a black widget. And everything in the spec described white widgets. A person of ordinary skill would read the claim and say, I know what black means. And the fact that the spec doesn't say, by using the term black, we mean white, unless it's that clear, a person of ordinary skill would read black to mean black. And I was told by someone of ordinary skill in avionics, in navigation, heading means heading, and unless you tell me expressly you're using it to mean something else, I will interpret it to mean heading. But the calculation, though, that's described not only in column 6, but also in the response to the rejection, I'm talking about page A270 and 271, it really speaks to a particular bearing, doesn't it? It does. Even though at the end of the sentence, the heading of the aircraft is determined by the circuitry, which is blocks 46, 47, and 48 of figure 5. Yes. And I believe the examiner's response by saying, I still reject the claims. You need to recite heading if you want heading to be the way alignment is determined. By amending the claim and reciting heading, as the examiner understood it, Honeywell adopted the claim normally. But the examiner then, on June 5th, which is A276, states, but it appears that in order to be operational, the aircraft heading inputs would have been necessary, and no such inputs are claimed. So that's when they put the heading requirement in the claim. Exactly. So from that perspective, isn't it still a bearing at that point? Are they describing a bearing instead of a heading? No. You know they're using the term heading. No, because, I mean, if the examiner understood that, after their response, he would have said, okay, then your recitation of bearing is taken to mean heading, and therefore you've already recited that. But he didn't take that. He said, look, I am saying that when you have not recited the claim, the claim says we want to determine alignment at that time. It said we want to determine alignment based on the heading of the aircraft. He said you need to recite something that says you have that information. Amend the claim the way you wrote the first one, and if you do that to expressly recite heading inputs, then I will allow the claim because it now is operational. I know what heading means. But figure 5, though, if you put all of the mathematical inputs into it, you'll come out with a bearing. Figure 5 implementation shows a bearing calculation. What do we do if, as in my hypothetical case, the examiner and the applicant, or at least the lawyers for the applicant, which is probably the problem, the lawyers and the examiner were just not on the same page. So there's no evidence, at least to my eye at this point, that the lawyers acquiesced in an understanding of what heading meant that was contrary to the understanding that was evinced on page A270 shortly before that. What do we do if the examiner was assuming heading meant one thing and the prosecuting attorneys were assuming that heading was both understood to mean and was being consistently used to mean something else? What does that tell us about how we ought to treat the claim? I think that the notice function and the Abbott case says that when the intrinsic evidence sets up an ambiguity, that you don't have the necessary clear and deliberate indication that a conventional term is being redefined. And you have to default because the public's got to rely on plain and ordinary meaning to a person of ordinary skill. But ambiguity is a little bit different from the problem from the one I'm trying to describe. What I'm trying to describe is a situation in which, as far as the patentee is concerned, and let's say hypothetically, I know you don't subscribe to this fully, but suppose that if a person were to walk in without any knowledge of the back and forth with the examiner and so forth, but just were to read the specification and were to read the statements made, for example, in 270, that person would be completely convinced that the word heading was being used to mean bearing. So as far as the extrinsic evidence up to that point was concerned, unlike the examiner, that person would be certain that this patent described a bearing and called it a heading. That's by hypothesis. In that situation, where the examiner then comes back and says, no, you must add something with respect to heading, and let's assume we know somehow that the examiner was operating under the assumption that heading was being used in its conventional sense, does that now change the meaning of the word in the patent? I believe it does. When the applicant then amends the claim consistent with what the examiner— If you say it does change the meaning of the word in the claim, that is— From what I misled. My question was unclear. From the meaning that I'm hypothetically giving it— Up to that point in time. But not the natural meaning of the term. Yes. I think we're on the same wavelength. I think that you have to conclude that by the applicant's adding the terminology that the examiner asked for at that point in time to the claim, that the understanding of the examiner is the one that controls. I know I'm well over my time. There's just one short point I'd like to make on ground proximity warning systems, which is that I believe you can't interpret that terminology as four separate words with plain English meanings matched together. I think you have to look at it as a term of art. As we discussed, the evidence to the record shows that there was an established meaning to those four words used together. When you said ground proximity warning systems at the time, they said, oh yeah, that's TSOC92. We know what that means. The FAA has mandated it. It's not four plain English words, as Honeywell is attempting to ask you. Answer one more question while you're standing before us at the moment, and that is this. Assuming we conclude that heading in Claim 1 means heading in the conventional sense, how does that help you? Because there's no dispute that the system that's being accused of infringement does not use heading in any form. That's what I needed to understand. Thank you. Very well. Were you done with that second point? I was done with that second point. If there are questions when I come back on the enable-disable issue, I'll be happy to answer them. Why don't we do this? We'll give you your full rebuttal time, and then if you could add eight minutes to Mr. Toronto's time. Because I think you're – well, eight and a half minutes. Thank you very much. Thank you. Mr. Toronto, I think I may have started out accusing Mr. Pollack of having written the red brief, and I apologize to both of you for that. Actually, I found your red brief helpful on a couple of issues. One of them is, as I say, the explanation of the pause system, which was interesting and understandable. Curious that you never explained – you never really explained your own system, but maybe that's because it's inexplicable. But putting that aside for the moment, the debate thus far, the discussion thus far suggests, and I want to see if you agree with it, that there is an inherent incompatibility between the written description that appears in this particular patent and the actual plain-meaning, normal understanding of Claim 1. Do you agree that that's true? I agree, except that I wouldn't – certainly with the normal, ordinary meaning, how plain and black and white it is, I think, is maybe a separate question. But there's no dispute that the starting point of those skilled in the art on reading the heading is what we ordinarily refer to as barren. And that the written description seems to clearly be thinking in terms of barren. I think unmistakably so. I think unmistakably so. All right. Now, if I may, let me focus on what is causing me the biggest problem with your side of the case. And that is, if you look at the office action of February 25th, this is page A180 of the appendix, the examiner – and this comes back to our presiding judge Bryson's insightful question at the very end – what do we do when the examiner has one thought in his head and the prosecuting attorney has an entirely different one? We'll come back to that in a minute. But here's why it seems to me clear that the examiner was thinking of something else, because the examiner says on page A180, In claim 14, it is unclear how a runway is compared to a datum or how alignment with a runway is sensed. In response to that, if you look on page A242, you'll see the response by the attorney who's trying to get this patent approved. The attorney says, claim 14 has been – this is the bottom of page A242 – claim 14 has been rejected because the examiner believes it is unclear how a runway is compared to a datum or how alignment with a runway is sensed. Claim 14 has been amended to delete datum and recite a source of signals representative of the relative angular position of a particular runway with respect underlined to the heading of the aircraft. Now, if you do one further thing, which I've done because you so nicely sub-paragraphed claim 1 in your brief, if you take sub-paragraph 5 of claim 1 and you substitute the trial judge's definition, verbatim definition of heading for the word heading in paragraph sub-5, this is what you get. Means responsive to said first and second sources of signals for providing a signal representative of the alignment of the aircraft with the runway and – now the insert – and the angle formed by the line connecting the aircraft position and the airport and a reference datum. Now, in using her definition of heading, she's put datum back in, which is exactly what the examiner said you have to take out. And secondly, she's put in a definition that makes no sense because it says the alignment of the aircraft with the runway and 1. the angle formed by the line connecting the aircraft position and 2. the airport and 3. a reference datum. Well, you can't have a line that's described in that way that makes any sense at all because there's nothing that explains how you do that line. And I think that's what the examiner was troubled by, so it seems to me when the examiner said put in heading, the examiner had a totally different concept, but that's what the examiner got. Let me see if I can – Can you work with that? If I can work with that. All right. The reference datum that people are talking about is north, so you don't have three points to make a line. You have two points to make a line compared to the reference datum and that's what makes the angle. Too bad they didn't put in north this case probably. They never probably would have had to make an amendment. It's entirely purged. May I remind you that the examiner said I don't know what reference datum means. Yeah, that's unfortunate. And you took it out. You said okay, we'll take out reference datum and guess what we put in. We put in heading. The examiner unquestionably started with remarks that are reasonably understood to reflect his understanding at the outset of heading in the ordinary sense. But that's only where it started because what happened after that was – that's the 180 series that you're talking about and then we get our response in the 240 series. And if you turn a couple of pages later after 242, which you did, all is part of the same set of remarks. On 244, we're now talking about claim 21, same kind of alignment language and we say here's what heading is. Look at column six. I'm using column six here as a substitute for the page numbers in the application. So look at column six. That's the first place where we say to the examiner, here's what we mean by heading. I think 245. 244. Yeah, it's the page underneath. Right, 244.5. Okay. At that point, the examiner never repeats his initial assumption, which I'll grant for now, that we were using initially – his initial assumption that we were using heading to mean the pointing meaning, not the positional meaning. After that, he says, you need to put some stuff about heading in the claims. And then – and the next round then is what appears at 270, 271, where I think it couldn't be clearer where we're saying heading is the positional meaning, not the pointing meaning. So I don't dispute that if you ask the question, what is the most likely assumption the examiner had at the very beginning of the process, that the answer would be the pointing meaning. But that was only the beginning of the process, and what happened thereafter, it seems to me, just made it unmistakable that the usage we were engaged in was the positional. Let me invite you to look at A256, which now takes place in December of 88. This is the office action back in December, I believe, in which the examiner says, In Claim 21, determining means are said to find aircraft alignment with respect to a runway based on runway heading and latitude and longitude data. However, it appears that in order to operate the means would also have to receive inputs from an aircraft heading sensing device. In Claim 24 – I think it's an it rather than is – in Claim 24, it appears that aircraft alignment could not be found without aircraft heading inputs. Language is used in Amended Claims 14 and 19 to suggest that to rectify this problem. So almost a year later, the examiner is still saying, hey guys, I meant what I said back in February, please put in heading. I probably overstated the matter when I said that the examiner never suggested, because the first reference at 244, 245 for our heading was built into a discussion of alignment. It is in response to the one that you just mentioned, 256, that we then set forth what's at 278, 271. See, what's troubling me, Your Honor, what's troubling me is exactly the point that Jed Bryson focuses on, and that is it's clear the examiner had a different picture in his head. Only initially. Only initially. Well, I'm not convinced he ever let go of it. If he had thought that what we were claiming was a pointing meaning, the first thing he would have said is, where is this anywhere in the written description? And I think it's all agreed here now. There is no reference anywhere in the written description to use of a pointing meaning. Anywhere. The entire written description of what we invented is about the positional meaning. The word heading never appears. That's right. The word heading doesn't appear in the specification. Which is why I'm amazed that your prosecuting attorney accepted this. Accepted. Accepted the examiner's insistence that heading be put in, since it never appeared anywhere in his written description. Well, I think it is plain from the prosecution history that the examining, the prosecuting attorney, and at least one of the inventors who was taking the lead here on this, in fact, thought that heading meant the positional meaning. They said it first at the 244 place and then again in explicit detail at the 270, 271 place. So that by the time the amendments were put in place and the examiner said, okay, now I see how you can have a claim to a heading without a sensing device to sense the pointing direction. He accepted the amendment. That's why it seems to me, short of a legal requirement that says, by this word we mean X, when the normal meaning is Y, this has got to be a case where any skilled reader would read the packet in light of the specification and the prosecution history and say, it's perfectly clear what this invention was claiming. Am I correct in concluding that the first time the word heading, at least as pertains to this patent directly, shows up is on page 242, which is the point at which the datum language has been objected to and the substitution is heading. That was not, I take it, that language was not an examiner's suggestion, was it, at that point? I know he made the later suggestion, but I thought at this point I had the impression that when that first change was made to go from datum to heading in Claim 14, which became 1, that that was the first time it popped up. Is that right? I think that's the first time it popped up in Claim 14 that the word is used in some of the original claims. So it's not, it didn't pop up for the very first time. One indication that there was a little bit more looseness about this bearing, heading usage than we might be assuming here is that Universal in its reply brief here says, well, you talked a little bit about the heading of the runway. Runway, yeah. And it says, well, that can mean only one thing because, as it says, a runway doesn't have a bearing. It doesn't have a heading either. But, of course, in its own software, it uses the term bearing of the runway. These are not terms that, like black and white, have meanings that are obviously universally and sort of fixedly opposite to one another. And that's what I think accounts for the unmistakable reality of this prosecution history together with the specification in which they're talking about appointing meaning and using the term heading because it was an understandable mistake of usage if one takes the most normal usage as the only usage. Then you would call it a mistake, but it was a perfectly clear mistake about what was intended. What I'm suggesting is it may not be as clear a mistake as all of that. With the misuse of the term heading, meaning bearing, we all know what bearing means, a reference to a fixed point. Now, what happens in the claim itself? Is it indefinite or is it a question of not being able to determine by public notice what it means so it's not enabled? No, I think you can. The indefiniteness standard, of course, is whether after applying the normal tools of construction, you can figure out what it means. And the normal tools of construction, the minute you get away from the word by itself and the most common dictionary definition, just points overwhelmingly to what we're comparing, if that's the right word. But your argument is premised totally on the column six type of an analysis of figure five. Well, it's two things. The column six and figure five in the specification and then confirmed by the prosecution history where we say heading is appointing meaning and use the term, I don't know, what is it, five times in that paragraph. The court, as you know, has said on a number of occasions, sometimes the prosecution history can be blindingly clear about what the patentees meant. I think if there's ever such a case, this is such a case. Well, this is not blindingly clear even from the prosecution history. I think as Judge Plager points out, you have to really tease it out completely from the prosecution history. You have to go back and forth in order to make a determination as to what it means. I really don't think so. I think if you just read it in sequence, the only thing that the other side really has going for it is the examiner's initial assumption. And that initial assumption got corrected by the applicants who said when we're putting this word heading in, this is what we mean by it. We mean the positional meaning and you don't have to worry about adding something to the sensing devices because it's right there. It's the sensing device, namely the longitude and latitude sensing devices that say now I know where I am. I know where the airport is. There's a line between those two things. Connect that line to a reference datum, true north, and you have an angle. That's the angle we're looking for. So I think after that initial examiner assumption, I don't think there's anything unclear about that at all. I don't want to seem quarrelsome, but they do have one other thing going for them besides the examiner's initial assumption, and that is the language of the claim. Every case in which one has to go beyond the first gloss dictionary definition to say something quite different is made clear by the spec in prosecution history is that. That's right. Unquestionably, that's the hurdle. Let me, if I may, pick up just something that I think Judge Bryson was reaching for and I'm not sure we quite focused it. Who was it first initiated the use of the term heading? That is, does the prosecution history indicate that the examiner said, I don't know what you mean by what you've got here, and then was it the prosecuting attorney, whatever you want to call that person, who came back and said, oh, what we mean is heading? Was that the sequence as you understand it, or was it the examiner who came up with the word heading? I don't know, Judge Bryson, if that's where you were reaching with your earlier question, but I thought that was the point. Do you happen to have a clearer sense of that? Not as clear as I should. The term heading is in some of the original claims, so the examiner didn't introduce it into the patent as a whole. It's not an original Claim 14, and his original remarks about Claim 14 at 180 don't use the term and don't say, here's what I think you ought to be doing. There is a brief reference, although I'm not sure this really would count as the examiner suggesting in any way that the term heading be used, but there is a reference at 183 to Bateman, which the examiner characterizes as referencing runway course direction, heading, and localizer deviation, whatever that is. That, I think, is the basis on which the second thing Universal has going for it on this argument. That is the basis for it, namely the reference to Bateman, which if you go and look at Bateman, which didn't get put into this claim construction record, you will see Bateman there used heading in the pointing sense. That's the basis on which I think it is reasonable to say the examiner initially had in mind the ordinary pointing meaning of heading. It's everything that happened thereafter that says, no, no, no, because we don't have that in our written description of what this invention is doing. You think the examiner then came around in his thinking, is that what you're saying? Or are you saying it doesn't really matter what the examiner thought? I think I would say actually both, that it doesn't really matter unless for some reason the examiner actually said, no, no, no, I disagree with you. I'm going to accept your claim, giving it a different interpretation from the one that you have made clear to me. But he didn't do anything like that. How about if he said, I won't approve this claim unless it says heading in the ordinary sense? Then we would have had an interesting question about whether to accept that amendment and whether that would have risked a written description or lack of enablement objection. That's all the kind of stuff that of course never occurred because when he did accept the amendment, he understood perfectly well that what was being put into the claim was intended to reflect what was in the written description from the beginning, which is the position on the amendment, not the plaintiff's. Did you have any other points? Let me briefly, if you could. Yeah, two very quick things. We don't of course agree that if for some reason heading got interpreted, the heading claim construction got reversed, that judgment as a matter of law would be entered for us. We would at least have a doctrine of equivalence claim, which never got to be presented or had to be ruled on because the district judge in summary judgment said, well, I adopt this meaning of heading so I never need to get to it. Wouldn't we have a problem though with doctrine of equivalence if we read heading in the traditional sense, the normal sense? We would be happy to litigate that. That has not been litigated and it's conceivable that we would lose on that, but that has not been litigated. And I guess the only other thing I would say on the ground proximity warning system, it seems to me that the specification never says we're doing this by reference to the FAA set of approved systems in existence at the time. Of course, the FAA could approve on a constant rolling basis any number of new systems. It never capitalizes the term ground proximity warning system. It in fact breaks it up into its component pieces and it says in terms, and I think we quote all of this around page 31 of our brief over and over again, this applies to essentially any warning system. And when we amended in the prosecution the claim to warning system to a claim to ground proximity warning system, that didn't amend it. That only amended it to say here's the kind of danger that the warning system is going to warn us, mainly you're too close to the ground, not to a fixed set of environments at the time. Thank you, Mr. Tarano. Mr. Pollack, we've gone over a bit. We will give you your five minutes and if you need a little more time than that, in fairness, we'll extend your time. Thank you very much, Your Honor. I don't think I will. A couple points I just want to make on this prosecution history issue because I think it's important to understand the sequence and some things that happened. As the court points out, early in the prosecution history when the examiner originally rejected Claim 14 and said a datum is ambiguous and they amended to add heading of the aircraft, the examiner at that point allowed Claim 14. Moneywell accepted the allowance of Claim 14. But the word heading, at least in the context of Claim 14, came from the applicants, not from the examiner. Yes. Not at that point, at least. Exactly. But he had already said. Which way does that cut? Well, where it cuts is you can't then say, oh, well, then afterwards in Claim 21, the other claims, all of a sudden the examiner had a different understanding of what heading meant because now you're interpreting the claim that he allowed earlier differently from the claim that he allowed later. And that was the whole point. He said, I'm not going to give you Claim 21 because it doesn't say heading yet. I gave you Claim 14 because you amended to recite heading and I know what that means. I'm not going to give you 21 until you amend it like Claim 14 and add heading. They said, oh, but we don't have to do that because here's the specification and so on. He said, uh-uh, amend the claim to say heading and you can get that claim like the earlier one and that's what they did. So to say, oh, well, he had a different understanding earlier when he allowed Claim 14 and they accepted it than when he allowed Claim 21 and they accepted it says, okay, well, you interpreted two claims that use the same words differently. I don't think you can do that. The other issue about, oh, the examiner would have recognized that we didn't disclose. Mr. Pollack, wasn't Claim 14 allowed after the datum language was dropped? Yes. And heading was inserted? And heading was added before this discussion about the specification occurred. In spite of that, what if the examiner misunderstood the meaning of the term heading as Judge Bryson might have some problems with? What happens if, in fact, he misunderstood it? Well, I think that the examiner's misunderstanding creates – that says he's a person of ordinary skill. His understanding is a reasonable interpretation of that claim language. That means that it's a reasonable interpretation on the part of a person of ordinary skill reading the claim subsequently. He says, I agree with the examiner that that's what it means. And therefore, that's why the plain ordinary means should control here because you can't expect a competitor to read this file and say, oh, well, the examiner was wrong. Honeywell means this specially. You just can't expect a person of ordinary skill to come up with that answer if the examiner himself was mistaken. Except that to the extent that you're relying on remarks made by and requirements imposed by the examiner prior to the later statements, such as the one on 270, and that would include both 14 and 21, then the examiner at the time he evinced a particular view didn't have the benefit of what he was told later. Well, again, it seems to me that the applicant then benefited when he had one understanding or changed his understanding, benefited again, created a – by themselves created this problem in the file history. Let me ask the question this way, and we're sort of buzzing around the issue and asking in different ways, but it's a difficult question. Suppose that on A270, instead of going through a paragraph in which the math is discussed and one comes to the conclusion at the end that they're really talking about varying even though they're using the term, suppose that in place of that there had been one simple sentence which said, so far there's been some confusion about our use of the term. We are using the term heading to mean what is conventionally known as varying, period. Would you be satisfied that that would solve the problem of this case and that, put harshly, you would lose? Well, yeah, but actually – Okay, but you say that's not what happened. That's not what happened. Even if the examiner later said put heading in there. But that's not what happened. All right. And if that had happened, then competitors could have seen that and could have designed their systems not to use varying to avoid infringement. Even if they hadn't been clever enough to go pick up the prosecution history and so forth. One is charged with notice of the prosecution. Exactly. That's right. So what this case comes down to is, is A270 the functional equivalent of saying heading equals varying? And if we conclude that it is – If read in the entirety, not by itself, but read in the entirety. Right. Yes. Okay. I don't disagree with that. One last point, and I know this is the point that the examiner would have recognised immediately that you didn't disclose varying and therefore your claim lacks written description, etc. At a point that earlier in the prosecution the examiner rejected the claim. Didn't disclose heading. Didn't disclose heading in the spec. The examiner rejected the claim in view of Bateman and said that heading was known and that determining alignment based on heading would have been obvious to a person of ordinary skill. That says that the examiner believed that reciting heading qua heading in its pointing sense in the claim was sufficient for a person of ordinary skill to understand the claim and to actually practice the invention regardless of the lack of disclosure in the spec. But that's a different kind of alignment, right? I mean you can't have the bearing type alignment that's described in column 6 just by knowing heading and the pointing direction of the air. But you can have alignment. But it's a different kind of alignment. It's a different kind of alignment. It's the alignment in which the plane is here and the airport is there. Yes. So they're not lined up like this. It's the alignment of the direction of travel with the runway versus the location. But to the extent that we conclude from the patent itself that the term alignment is being used to mean this, not this, or even this, that term would not, the Bateman wouldn't satisfy that, right? Well, again, it becomes circular because it comes back to alignment in terms of heading. Well, but even if we never get to heading, it's just the patent, the specification doesn't use the term heading so there's some question as to how alignment. But alignment by itself is, as the course already pointed out, is indeterminate. If all you say is alignment, you need to determine the alignment of the aircraft with the runway. You don't have enough specificity, which is why the examiner at the beginning said you have to tell me what kind of alignment you're talking about. But the spec does seem, does it not, to give us more guidance as to what alignment means than it does what heading means. Because we do have alignment used and we have it at the end of the math passage. I agree. There's a kind of alignment that's close to the specification. And it's not both of them are moving north-south. That's correct. Okay. Very well.  I appreciate both counsel for a very helpful answer.